**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| LUCAS HUDDLESTON,<br>on Behalf of Himself and All Others Similarly Situated,<br><br>Plaintiff,<br>    -against-<br><br>AMERICAN AIRLINES, INC.,<br><br>                Defendant. | Civil Action No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

## I.    CLASS ACTION COMPLAINT

Plaintiff Lucas Huddleston, on behalf of himself and all other persons similarly situated, by and through his counsel, hereby complains and alleges as follows:

## II.    INTRODUCTION

1.    Defendant American Airlines, Inc. ("American" or "defendant") is the largest airline carrier in the world. American unilaterally imposes on its passengers a set of rules and requirements called an International General Tariff (hereinafter, "IGT"). The IGT, together with the fare rules for the fare or fares for the flight or flights the passenger purchased, constitutes a binding contract between the airline and its passenger, as further described below (hereinafter, "Contract"). In contravention of the Contract, American systematically bars passengers from traveling when they attempt to check in within arbitrary time limits that are not mentioned in, and are not a part of, the Contract.

2.    American trains its employees and agents to impose the following restrictions on passengers traveling without checked baggage: For passengers traveling internationally on flights departing the United States, check-in must be completed at least 45 minutes before departure. For passengers traveling internationally on flights departing other countries, check-in must be completed at least 60 minutes before departure. The Contract, however, is completely

silent as to these check-in time limits.  Nor do any controlling rules or other authority impose such time limits on American's passengers.

3.     The direct consequence of American's unlawful conduct alleged herein is that many of its passengers adhere to every condition of travel specified in the Contract, and yet are prohibited from boarding the flights they purchased.  Worse, American takes the position that it is the passenger's fault for not checking into the flight in advance of an arbitrary deadline that American unilaterally imposes and nowhere discloses in the Contract.  American makes no attempt to remediate at its expense the consequences of its decision to bar the passenger from traveling, and indeed charges fees to allow the passenger to change to new flights.

4.     American's breach of the Contract—which it drafted, which is uniform, and which American unilaterally imposes on its passengers—has caused direct, foreseeable economic harm to plaintiff and members of the class (defined below).  For example, American's actions compel passengers to pay more fees to American.  A passenger may be required to pay a "change fee" to change to another flight or flights.  A passenger may be required to pay a "fare difference" if the fare for the new flight is higher than the fare for the existing flight.  These fees can be significant; a typical international change fee is $200, and many are higher.

5.     Also, American's breach may compel passengers to forfeit benefits for which they have already paid.  A passenger may lose a premium class of service, preferred seating, priority boarding, or other economically-measurable prepaid benefits associated with the ticketed flight.  American takes the position that the passenger forfeited any refund of the corresponding fees by failing to comply with American's extra-contractual, arbitrary check-in time requirements.

6.     In addition, American's breach may compel passengers to incur out-of-pocket expenses while they await a later flight.  Among other reasonably foreseeable expenses,

2

passengers may incur costs for overnight lodging away from home, meals away from home, ground transport to and from an airport, and telecommunications to notify others of their delay. Moreover, passengers may forfeit other prepaid services contingent on timely travel, such as hotel bookings, ground transfers, ticketed entertainment, etc., at their ticketed destination.

7.      American is enriched by its breaches of the Contract.  American collects fees, including change fees and fare differences, when rebooking passengers who were denied travel after failing to comply with American's illegal, extra-Contractual check-in timing requirements. In addition, after denying a passenger boarding, American can use that passenger's seat to upgrade another passenger, to accommodate a standby passenger, to accommodate another passenger on an overbooked flight (and thereby avoid paying denied boarding compensation), and/or to transport an American employee.

## III.   VENUE AND JURISDICTION

8.      The Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d) insofar as the amount of controversy exceeds $5,000,000 and the class is comprised of at least some persons who are citizens of states different from American.

9.      This Court has personal jurisdiction over American because American does systematic and continuous business and has a place of business in this District.

10.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because plaintiff is a resident of this District and American does substantial business in this District and is a resident of this District pursuant to 28 U.S.C. § 1391(c).

## IV.    PARTIES

11.     Plaintiff Lucas Huddleston is a U.S. citizen residing in Chicago, Illinois.  He booked a flight on American, from an international airport to a domestic airport, had no checked luggage, and complied with every condition of travel that the Contract imposed on him.

Nevertheless, he was denied transport because he attempted to check in 50 minutes before the departure time. As a result of American's refusal to allow him to board the flight, Mr. Huddleston suffered economic harm.

12.     American Airlines, Inc. is the world's largest airline. It is incorporated in Delaware and headquartered in Texas. American has substantial operations in Illinois, including at O'Hare International Airport (an American hub.)

## V.     FACTS

13.     On April 15, 2015, Mr. Huddleston made a reservation to travel on January 16, 2016 from Hong Kong to Dallas, Texas to Portland, Oregon on American flight 138 connecting to American flight 1529. His first flight was at all times scheduled to depart at 1:40 p.m. local time.

14.     Rather than put all the rules and regulations governing international travel into the fare rules for each fare offered, American elected to place its generally-applicable rules in a separate general tariff. Specifically, American put its general rules into its International General Tariff (available on the Internet at https://www.aa.com/i18n/Tariffs/AA1.html), which applies to all international travel on American. Its provisions were available to Mr. Huddleston, and to the other class members, via their e-ticket confirmation emails, on www.aa.com, or by request to American. The International General Tariff, together with the fare rules for the fare or fares for the flight or flights the passenger purchased, constitutes the Contract.

15.     Mr. Huddleston complied with all of his obligations under the Contract.

16.     The Contract does not include any requirement that passengers without checked baggage check in at any particular time. The Contract does, however, require that passengers present themselves at the departure gate 30 minutes before departure. Because check in is a pre-

4

requisite to presenting oneself at the gate for boarding, the most that may be said is that the Contract necessarily requires passengers to check in no later than 30 minutes prior to departure.

17.     On January 16, 2016, Mr. Huddleston arrived at the Hong Kong airport at approximately 12:40 p.m., in preparation for his 1:40 p.m. flight on American.  Mr. Huddleston was traveling with only carry-on baggage.  Fifty minutes prior to departure, Mr. Huddleston approached an American agent and attempted to check in.  The agent called a supervisor, who told Mr. Huddleston that it was too late for him to check in.

18.     As a direct result of American refusing him entry on his ticketed flight, plaintiff was forced to re-book his flight, stay an extra day in Hong Kong, travel the next day, and incur economic damages thereby.

## VI.     CLASS ACTION ALLEGATIONS

19.     Plaintiff brings this action as a class action for monetary relief pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of the following class ("Class Definition"):  All persons in the U.S. who were ticketed and confirmed to travel on flights marketed and operated by American, who presented themselves for check-in with no checked baggage more than 30 minutes but within 60 minutes before scheduled departure for flights between an international airport and a domestic airport, and more than 30 minutes but within 45 minutes before scheduled departure for flights from a domestic airport to an international airport, and who American barred from boarding their flight during the period November 29, 2011 through the present.

20.     Excluded from the class are defendants herein, and any person, firm, trust, corporation, or other entity related to or affiliated with defendants, including without limitation persons who are officers, directors, employees, agents, associates or partners of defendants.

21.     This action is properly maintained as a class action.  The Class satisfies all of the requirements of Rule 23 for maintaining a class action.

22.     **Ascertainability.**  The class members are known to American, and their identities are recorded in American's business records, along with details of the timing of their respective attempts to check in, the fees and charges they respectively paid, the prepaid American services and benefits they forfeited by being denied the right to board their flight, and the economic value of such fees, charges, services and benefits. Moreover, the Class Definition enables every putative class member to identify himself or herself as a member of the class.

23.     **Numerosity.**  The class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will provide substantial benefits to the parties and the Court.  Plaintiff believes there are hundreds or thousands of members of the class, who are geographically dispersed throughout the United States.

24.     **Existence and Predominance of Common Questions of Law or Fact.**  There are questions of law or fact that are common to the class and which predominate over questions affecting any individual class member.  Defendant relied upon a single, uniform Contract that was imposed on all class members, and defendant pursued a common course of conduct toward the class as alleged.  This action arises out of a common nucleus of operative facts.  Common questions of law or fact include without limitation:

a.      Whether the Contract requires class members to check in at any particular time prior to departure;

b.      Whether any other rule, regulation or authority requires class members to check in at any particular time prior to departure;

c.      Whether defendant breached the Contract by imposing an extra-contractual requirement that class members check in at a particular time prior to departure;

d.      Whether plaintiff and the class have sustained damages as a result of defendant's breach of the Contract;

e.      Whether a common methodology exists to calculate plaintiff's and the class's damages and, if so, what is the proper measure and appropriate methodology to be applied in calculating such damages; and

f.      Whether injunctive relief is appropriate.

25.      **Typicality.**  The claims of plaintiff are typical of those of the class, and defendant has no defenses that are unique to plaintiff.

26.      **Adequacy of Representation.**  Plaintiff will fairly and adequately protect the interests of the class and has no interests adverse or antagonistic to the interests of the other members of the class.  Plaintiff has retained competent counsel who are experienced in the prosecution of consumer class action litigation.

27.      **Superiority.**  A class action is superior to other methods for the fair and efficient adjudication of the claims asserted herein.  A class action will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of time and expense that the prosecution of numerous individual actions would entail.  Class treatment will also permit the adjudication of relatively small claims by many class members who could not otherwise afford to seek legal redress for the wrongs complained of in this action.  Plaintiff does not anticipate any unusual difficulties in the management of this class action.

## FIRST CAUSE OF ACTION: BREACH OF CONTRACT

28.     Plaintiff realleges the foregoing paragraphs of this Complaint as though fully set forth herein.

29.     Plaintiff and all other class members entered into valid and enforceable contracts with American for transport.  All such contracts are identical in the provisions embodied in American's non-negotiable form International General Tariff.  Plaintiff and the class have fully performed all their obligations required under the Contract.

30.     American nonetheless refused to provide the transport services specified by the Contract, and in doing so, materially breached the Contract with plaintiff and all other members of the class.

31.     As a direct result, plaintiff and all other members of the class incurred reasonable and foreseeable economic harm, including without limitation change fees, forfeiture of miles redeemed, forfeiture of prepaid travel benefits, and out-of-pocket expenses for hotel, meals, ground transport, and other harm caused by American's breach.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff, individually and on behalf of the class, prays for judgment against defendant as follows:

A.     Certification of plaintiff's claims as a class action, pursuant to Fed. R. Civ. P. 23(b)(3), on behalf of the proposed class;

B.     Compensatory relief for all of plaintiff's and the class's reasonably foreseeable damages;

C.     An order enjoining defendant from denying boarding to passengers who present themselves to check in for international flights 30 or more minutes prior to departure time;

D.     An award of reasonable attorneys' fees and costs;

8

E.      Pre-judgment and post-judgment interest; and

F.      Such other and further relief that the court may deem just and proper.

## DEMAND FOR A JURY TRIAL

Plaintiff hereby demands a trial by jury.


Dated:  September 20, 2016                    /s/ James L Thompson
                                             Daniel Lynch (IL 6202499)
                                             James Thompson (IL 6199621)
                                             LYNCH THOMPSON LLP
                                             150 S Wacker Drive, Suite 2600
                                             Chicago, IL 60606
                                             (312) 346-1600
                                             (312) 896-5883 (fax)
                                             dlynch@lynchthompson.com
                                             jthompson@lynchthompson.com

Michael J. Boni                              Benjamin Edelman
(*pro hac vice* application forthcoming)     (*pro hac vice* application forthcoming)
Joshua D. Snyder                             169 Walnut Street
(*pro hac vice* application forthcoming)     Brookline, MA 02445
John E. Sindoni                              (617) 359-3360
(*pro hac vice* application forthcoming)     ben@benedelman.org
BONI & ZACK LLC
15 St. Asaphs Rd.
Bala Cynwyd, PA 19004                         Oren S. Giskan
610-822-0200                                 (*pro hac vice* application forthcoming)
mboni@bonizack.com                           GISKAN SOLOTAROFF & ANDERSON LLP
jsnyder@bonizack.com                         11 Broadway, #2150
jsindoni@bonizack.com                        New York, NY 10004
                                             (212) 847-8315
                                             ogiskan@gslawny.com