# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| LUCAS HUDDLESTON, on behalf of himself and all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | No. 16-cv-09100 |
| v. | ) ) | Judge Andrea R. Wood |
| AMERICAN AIRLINES, INC., | ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

On January 16, 2016, Plaintiff Lucas Huddleston arrived at the Hong Kong airport and attempted to check in for his American Airlines flight to Dallas, Texas fifty minutes before its scheduled departure time. To his dismay, he was told that his reservation had been cancelled because he was too late. According to Huddleston, although Defendant American Airlines, Inc. ("American Airlines") includes in its contract with customers a requirement that international passengers be at their departure gate thirty minutes before takeoff or else their reservation will be cancelled, there is no similar rule concerning the time passengers must check in. Nonetheless, American Airlines enforces a policy under which it cancels the reservations of passengers who fail to check in sixty minutes before flights departing from an international airport to a domestic airport or forty-five minutes before flights departing from a domestic airport to an international airport. Huddleston believes that American Airlines's enforcement of this policy breaches its contract with its passengers. Thus, he has filed the present lawsuit seeking to represent a putative class of passengers who have had their reservations cancelled as a result of this policy. American Airlines now moves to strike Huddleston's class allegations. Because Huddleston's complaint demonstrates that the proposed class cannot meet the predominance requirement of Federal Rule

of Civil Procedure 23(b)(3), American Airlines's motion (Dkt. No. 37) is granted.

## BACKGROUND[1]

Passengers flying internationally on American Airlines are required to adhere to a set of rules and requirements known as the International General Tariff ("IGT"). (Compl. ¶¶ 1, 14, Dkt. No. 1.) The IGT is incorporated, along with the fare rules for the passenger's fare or flight, into the binding contract between the airline and the passenger. (*Id.* ¶ 1.) One of the provisions of the IGT requires passengers travelling to or from an international destination to present themselves at the departure gate thirty minutes before the departure time; otherwise their reservations will be cancelled. (*Id.* ¶¶ 16; Decl. of Timothy J. McMahan, Ex. A, Dkt. No. 40-1.) In addition, the IGT recommends that international passengers check in two hours in advance of departure, and states that such passengers "MUST ARRIVE AT THE AIRPORT SUFFICIENTLY IN ADVANCE OF A FLIGHT DEPARTURE TIME TO PERMIT COMPLETION OF GOVERNMENT FORMALITITY [sic] ANDDEPARTURE [sic] PROCEDURES." (Decl. of Timothy J. McMahan, Ex. A.)

Huddleston alleges that American Airlines breached the contract between them when it cancelled his reservation on a basis not enumerated in the IGT or elsewhere in the contract. Specifically, he alleges that he was barred from traveling on his ticketed flight because he failed to check in sixty minutes before his scheduled departure time. (Compl. ¶ 17.) Huddleston had a ticket for a flight from Hong Kong to Dallas, scheduled to depart at 1:40 p.m. on January 16, 2016. (*Id.* ¶ 13.) Fifty minutes before his scheduled departure time, Huddleston attempted to

---

[1] While the following factual allegations are drawn primarily from the complaint, certain facts concerning the International General Tariff have been taken from declarations submitted in connection with American Airlines's motion to strike. The Court notes that the International General Tariff is incorporated into the complaint by reference, and therefore its contents may be considered by this Court in determining the sufficiency of the pleadings. *See Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 322 (2007) (holding that for a motion to dismiss "courts must consider the complaint in its entirety . . . in particular, documents incorporated into the complaint by reference.").

check in with an American Airlines agent. (*Id.* ¶ 17.) Even though he was travelling with only carry-on baggage, he was informed that it was too late for him to check in for his flight. (*Id.*) Although not a term of the contract, American Airlines trains its employees to require passengers flying without checked baggage to complete check-in at least sixty minutes before departure when traveling on flights departing from an international airport and headed to a U.S. airport, and forty-five minutes before departure for international flights departing from the United States. (*Id.* ¶ 2.) As a result of this unwritten policy, Huddleston was forced to re-book his reservation for a flight departing the following day. (*Id.* ¶ 18.)

Huddleston has now filed the present action on behalf of himself and a putative class of similarly-situated individuals. The class he seeks to represent includes all persons in the United States who bought tickets on flights marketed and operated by American Airlines, traveled without checked baggage, and were refused travel because they either: (1) attempted to check in for a flight departing from an international airport and arriving at a U.S. airport more than thirty minutes but within sixty minutes before the scheduled departure time; or (2) attempted to check in for a flight departing from a U.S. airport and arriving at an international airport more than thirty minutes but within forty-five minutes before the scheduled departure time. (*Id.* ¶ 19.) According to Huddleston, American Airlines breached its contract with him and the class members by refusing to allow them to travel on their ticketed flights based on "arbitrary" deadlines that are not specified in the contract. (*Id.* ¶¶ 3–4.) That breach caused class members to suffer damages in the form of potential additional fees associated with rescheduling flights, forfeiture of benefits for which passengers already paid, and out-of-pocket expenses resulting from being forced to travel on later flights. (*Id.* ¶¶ 5–6.)

**DISCUSSION**

Federal Rule of Civil Procedure 23(c)(1)(A) requires a federal district court to rule at "an early practicable time after a person sues or is sued as a class representative . . . whether to certify the action as a class action." Courts both within this District and outside of it "have held that a motion to strike class allegations . . . is an appropriate device to determine whether the case will proceed as a class action." *Cholly v. Uptain Grp., Inc.*, No. 15 C 5030, 2017 WL 449176, at *3 (N.D. Ill. Feb. 1, 2017); *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011); *see also Kasolo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir. 2011) ("A court may deny class certification even before the plaintiff files a motion requesting certification."). Indeed, in certain circumstances, it will be apparent from the complaint that the class allegations are "facially and inherently deficient" and therefore class certification is inappropriate. *Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014); *see also Lee v. Children's Place Retail Stores, Inc.*, No. 14 C 3258, 2014 WL 5100608, at *1 (N.D. Ill. Oct. 8, 2014). Where that is the case, a motion to strike class allegations may be ruled on before class discovery or before the plaintiff moves for class certification. *Valentine v. WideOpen West Finance, LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012).

A motion to strike class allegations is evaluated under Rule 23, rather than Rule 12(f). *Buonomo*, 301 F.R.D. at 295. That means the plaintiff must satisfy each of the four requirements of Rule 23(a): numerosity, commonality, typicality, and adequacy of representation. *Valentine*, 288 F.R.D. at 414. Rule 23(a) performs a gate-keeping function for all class actions, and a plaintiff must satisfy each requirement of Rule 23(a) before the Court's analysis may proceed. *Bell v. PNC Bank, Nat'l Ass'n*, 800 F.3d 360, 374 (7th Cir. 2015). Once the plaintiff has satisfied Rule 23(a), he must also meet at least one of Rule 23(b)'s provisions. *Wright v. Family Dollar,*

*Inc.*, No. 10 C 4410, 2010 WL 4962838, at *2 (N.D. Ill. Nov. 30, 2010). In undertaking the Rule 23 inquiry, the Court "does not presume that all well-pleaded allegations are true and can look beneath the surface of the complaint." *Id.*; *see also Lee*, 2014 WL 5100608, at *2. Courts disagree as to which party shoulders the burden of persuasion when the propriety of class certification is raised by means of a motion to strike class allegations. *Compare Rysewyk v. Sears Holdings Corp.*, No. 15 CV 4519, 2015 WL 9259886, *8 (N.D. Ill. Dec. 18, 2015) ("Unlike with a motion for class certification, defendants, as the movants, bear the burden of persuasion on their motion to strike."), *with Wright*, 2010 WL 4962838, at *2 ("Even when the defendant initiates the court's review of class allegations, the burden remains on the plaintiff to establish that the suit may be maintained as a class action."). Because the Court would reach the same conclusion here no matter which party bears the burden, for present purposes the Court proceeds as if the burden lies with American Airlines.

Here, American Airlines asserts that because of the unique circumstances surrounding the cancellation of Huddleston's reservation, he fails to meet the typicality requirement of Rule 23(a)(3). Furthermore, American Airlines argues that the class allegations should be stricken because Huddleston cannot satisfy the commonality requirement of Rule 23(a)(2) and the predominance requirement of Rule 23(b)(3).[2]

## I. Typicality

American Airlines argues that because Huddleston had been randomly selected to undergo additional security screening before his flight, there were unique circumstances surrounding the

---

[2] Defendant also argues that Huddleston's class definition fails because it includes individuals without standing and that Huddleston's claim is based on an inherently unreasonable interpretation of the contract. But Defendant's standing argument is plainly foreclosed by Seventh Circuit precedent holding that "as long as one member of a certified class has a plausible claim to have suffered damages, the requirement of standing is satisfied." *Kohen v. Pac. Mgmt. Co.*, 571 F.3d 672, 676 (7th Cir. 2009). And the argument based on the proper interpretation of the contract is a merits issue that the Court need not address at this time, given its ruling on the Rule 23 issues.

cancellation of his reservation that prevent him from satisfying the typicality requirement. Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Typicality is met when the plaintiff's claim "arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998). The purpose of typicality is to ensure that "the named representatives' claims have the same essential characteristics as the claims of the class at large." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983).

Ostensibly, Huddleston's claim is typical of the class he seeks to represent. He checked in for his flight over thirty minutes before departure but after the close of the sixty-minute cutoff at which point American Airlines directs its employees to deny passengers traveling from an international airport to a domestic airport entry onto their ticketed flight. Huddleston seeks to represent a class that was denied even the opportunity to make their flight when they fell within either the sixty-minute cutoff or the forty-five-minute cutoff applicable to flights from domestic airports to international airports. However, American Airlines points out that there is an additional detail specific to Huddleston that gave it further reason to anticipate he would not make his flight: Huddleston was randomly selected for additional security screening by the Department of Homeland Security. (Decl. of Timothy J. McMahan ¶ 8–9; *id.* Ex. B, Dkt. No. 40-2.) According to American Airlines, that screening would have added at least thirty minutes to the time he had to pass through security, customs, and make it to his departure gate. (*See id.* ¶ 8.) This raises the possibility that American Airlines will have a unique defense as to Huddleston that is not applicable to the vast majority of the class. *See Koos v. First Nat'l Bank of Peoria*, 496 F.2d 1162, 1164 (7th Cir. 1974) ("Where it is predictable that a major focus of the litigation will be on an

arguable defense unique to the named plaintiff or a small subclass, then the named plaintiff is not a proper class representative.") As explained further below, liability here depends on whether a putative class member would have made it to their departure gate on time. And with respect to Huddleston, American Airlines could argue that the additional delay entailed by the security screening made it virtually certain that he would not make it to his departure gate in contrast to class members who were not subject to the additional screening and may have a greater likelihood of making it to the gate in time.

Nonetheless, at the pleading stage, the Court is unable to conclude that Huddleston would not meet the typicality requirement. American Airlines asserts in one of its declarations (without any further supporting evidence), that the security screening would take at least thirty extra minutes. However, important questions remain regarding the nature of this screening that preclude the Court from rendering a decision on this issue prior to class discovery. Most importantly, class discovery is needed to test American Airlines's claim that such screening takes no less than thirty minutes. If this claim proves true, then Huddleston would not be able to satisfy typicality because that additional thirty minutes means that if he checked in at any time after the sixty-minute cutoff, he would definitely not reach his departure gate in time. Yet, it may also be the case that the additional screening might entail only a delay of an additional minute or two. In that case, this additional circumstance would not be so unique as to render him atypical as a class representative. *See De La Fuente*, 713 F.2d at 232 ("The typicality requirement may be satisfied even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."). For this reason, the Court cannot strike class allegations at this stage due to failure of typicality.

## II. Commonality and Predominance

American Airlines argues that the class allegations should be stricken because there would need to be countless individualized inquiries to resolve each class member's claim. While American Airlines is never clear whether its argument is intended to sound in commonality under Rule 23(a)(2) or predominance under Rule 23(b)(3), there is often significant overlap between the two questions that sometimes make them difficult to analyze separately. *Bell*, 800 F.3d at 374. Thus, the Court will address these requirements together.

Rule 23(a)(2) requires there to be "questions of law or fact common to the class." "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349–50 (2011) (internal quotation marks omitted). To satisfy the commonality requirement of Rule 23(a)(2), the "claims must depend upon a common contention that is capable of class-wide resolution." *Chi. Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015). In other words, the determination of the truth or falsity of the common contention must "resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. However, commonality is not met by simply raising common questions "but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* (internal quotation marks omitted).

Once a plaintiff has satisfied each of Rule 23(a)'s requirements, it must also satisfy one of the subsections of Rule 23(b). Here, the parties agree that the only applicable subsection is Rule 23(b)(3), which allows a class to be maintained where "questions of law or fact common to class members predominate over any questions affecting only individual members." Predominance is a far more demanding standard than commonality. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

624 (1997). It tests "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Id.* at 623; *see also Bell*, 800 F.3d at 378 ("[A] common question predominates over individual claims if 'a failure of proof on the common question would end the case' and the whole class 'will prevail or fail in unison.'" (quoting *Amgen Inc. v. Connecticut Retirement Plans & Trust Funds*, 568 U.S. 455, 459–60 (2013) (alterations omitted))).

The common question of law in this case is whether American Airlines breached its contract with Huddleston and the putative class members by denying them entry to their ticketed flights based on their failure to check in either sixty minutes or forty-five minutes prior to departure. Huddleston argues that there was nothing in the contract alerting passengers to this unwritten time limit enforced by American Airlines employees. In essence, he argues that American Airlines breaches its contract when it does not allow passengers like Huddleston at least the opportunity to reach their departure gate prior to the thirty-minute cutoff—the only express contractual deadline. Assuming, without deciding, that the commonality element is met here, the Court will focus its attention on the predominance inquiry.

Analysis of the predominance requirement "begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 810 (2011). Under Illinois law, the elements of a breach of contract claim are: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Asset Exchange II, LLC v. First Choice Bank*, 953 N.E.2d 446, 455 (Ill. App. Ct. 2011).[3] Although American Airlines does not concede that

---

[3] Huddleston does not concede that Illinois law governs the contracts for putative class members residing outside Illinois, but nonetheless accepts that the state law elements of breach of contract claims are substantially similar across states and therefore the choice of law does not affect the present motion to strike class allegations analysis. *See, e.g., Flanagan v. Allstate Ins. Co.*, 242 F.R.D. 421, 431 (N.D. Ill. 2007) (finding that where the relevant states' breach of contract laws are sufficiently similar, class certification is appropriate); *see also Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 413

9

there was a breach at all, assuming *arguendo* that there was a breach, it argues that Huddleston cannot establish that the breach caused an injury without resorting to an individualized factual inquiry for each class member. It bears noting that the injury from American Airlines's actions would not come from the customer being turned away at the ticket counter. Rather, the injury would be the denial of the opportunity to travel. The crux of American Airlines's argument is that there is no common method for proving that all or even a substantial portion of the putative class would certainly have made it to their departure gate thirty minutes prior to departure if they had been issued a boarding pass at check in, and thus fulfilled a condition precedent to being permitted to board the plane and travel to their destination. And a passenger's failure to satisfy that express condition means that American Airlines's obligation to allow him or her to board the plane is not triggered, and therefore the passenger is not injured when denied the opportunity to travel. *See Albrecht v. N. Am. Life Assurance Co.*, 327 N.E.2d 317, 319 (Ill. App. Ct. 1975) ("[A] condition precedent must be performed or no contractual liability results.").

American Airlines emphasizes the realities of modern airline travel, and the numerous procedures a passenger must go through on the way to his or her departure gate. Generally, once a passenger checks in, he or she must present his or her travel documents before being admitted to security screening. (Decl. of Timothy J. McMahan ¶ 7.)[4] Then, the passenger and any carry-on baggage must go through security screening. (*Id.*) Finally, the passenger must successfully pass through customs and immigration. These procedures, along with the actual walk to the departure

---

(N.D. Ill. 2012) (noting the similarity between the elements of Illinois and Ohio breach of contract claims); *Petri v. Gatlin*, 997 F. Supp. 956, 963–64 (N.D. Ill. 1997) (noting the similarity between the elements of Illinois and Texas breach of contract claims).

[4] While facts concerning airport security screening procedures were taken from the declarations and not incorporated into the complaint by reference, on a motion to strike the Court is permitted to "look beneath the surface of a complaint to conduct the inquiries" that Rule 23 requires. *Wright*, 2010 WL 4962838, at *2. Nonetheless, the Court's presents these facts only for context, and its decision ultimately does not depend on them.

gate, all factor into the amount of time it takes for a passenger to go from the point of check in to the departure gate.

It is apparent from the pleadings alone that the determination of the causation element—and American Airlines' liability to the class—would require individualized factual inquiries as to each individual class member. This precludes class certification as "[p]redominance is not satisfied where liability determinations are individual and fact-intensive." *Boundas v. Abercrombie & Fitch Stores, Inc.*, 280 F.R.D. 408, 415 (N.D. Ill. 2012). There are numerous factors that could affect whether a passenger checking in after the sixty or forty-five-minute cutoff would make it to the departure gate in time. Indeed, it is plainly obvious that a passenger who checks in thirty-one minutes prior to departure will not be able to reach his or her departure gate in time. Yet, such individuals are included in Huddleston's proposed class. Even for more borderline cases, American Airlines's liability would depend on numerous individual characteristics and circumstances. Take, for instance, a passenger who, like Huddleston, has only twenty minutes to get to his departure gate. Perhaps he could make his flight if the airport is not busy that day and he is able to go quickly through security and customs and his departure gate is close. However, a different passenger might travel on a busy day and remain in security and customs far longer than twenty minutes. Maybe two passengers quickly get through security and customs, but then must travel a great distance to the departure gate. One passenger might be physically fit and able to sprint to her gate in time. But the other passenger might be disabled and unable to keep pace, and thus arrives late. The hypotheticals could go on. Yet, they make clear that while certain passengers *might* be damaged by the breach because they could have made their flight on time, others would suffer no damage from the breach because there was no chance for them to timely reach their departure gate. While Huddleston insists that he should be able to

undertake class discovery on causation, he does not suggest how class discovery could change this common-sense conclusion.

American Airlines correctly observes that this action is analogous to *Pumputiena v. Deutsche Lufthansa, AG*, No. 16 C 4868, 2017 WL 66823 (N.D. Ill. Jan. 6, 2017). In that case, the plaintiff sought to represent a class of passengers on any international United Airlines flight that had been delayed under certain conditions. The defendant airline sought to strike the class allegations prior to class discovery because liability depended on whether the airline "took all measures that could reasonably be required to avoid the damage or that it was impossible for it . . . to take such measures." *Id.* at *10. In evaluating both commonality and predominance, the court observed that it was "impossible to imagine that the reasonableness of an airline's efforts could be the same for the hundreds or thousands of delayed flights that occur in any given year." *Id.* Even assuming commonality, it held that the class could not be certified because liability required an evaluation of the reasonableness of United Airlines' efforts to avoid delay across all its flights. *Id.* Just as the reasonableness of an airline's efforts to avoid delay could not be identical across hundreds of flights, neither can the effectiveness of an individual's efforts to make it to his or her departure gate be identical across hundreds or thousands of passengers checking in within sixty or forty-five minutes of their flight.

Moreover, Huddleston is simply mistaken when he argues that liability depends only on the existence of a breach, and that the putative class's individual circumstances bear only on the amount of damages. He appears to confuse a breach of contract ***claim*** with the breach of contract ***element*** of such a claim. The breach element of a breach of contract claim is susceptible to determination on a classwide basis. If the extra-contractual check-in cutoff was in fact a breach, then that conclusion applies equally to Huddleston and the rest of the class. To prevail on a breach

of contract claim, however, Huddleston must go one step further and establish that the breach of contract caused injury. *See TAS Distributing Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("Merely showing that a contract has been breached without demonstrating actual damage does not suffice, under Illinois law, to state a claim for breach of contract."); *accord Shepard v. State Auto. Mut. Ins. Co.*, 463 F.3d 742, 745 (7th Cir. 2006) ("Under Indiana law . . . causation is an essential element of liability in a breach of contract claim."). And whether a class member was injured at all depends on whether he or she could have made it to his or her departure gate on time but for American Airlines's purported breach. That determination requires an individualized, person-by-person analysis that will yield varying answers across the class.

The cases cited by Huddleston are inapposite. For example, *Butler v. Sears, Roebuck & Co.*, 727 F.3d 796 (7th Cir. 2013), stands for the unremarkable proposition that the determination of the amount of damages can be determined at a later stage of proceedings from the determination of liability. *Id.* at 798 ("[A] class action limited to determining liability on a class-wide basis, with separate hearings to determine—if liability is established—the damages of individual class members, or homogenous groups of class members, is permitted by Rule 23(c)(4) and will often be the sensible way to proceed."). Huddleston's mistake is to conflate the amount of damages with the existence of damages. The existence of damages (and thus injury) is essential to the determination of liability.[5] The determination of the amount of those damages is not— and therefore is irrelevant to the present predominance inquiry. Furthermore, these dual inquiries are analytically distinct. Whereas the existence of injury depends on factors related to a class

---

[5] Huddleston cites the Seventh Circuit's decision in *Hydrite Chemical Co. v. Calumet Lubricants Co.*, 47 F.3d 887, 891 (7th Cir. 1995), for the proposition that "[l]iability in a contract case . . . does not depend on proof of injury. Proof of liability is complete when the breach of contract is shown." However, the Seventh Circuit has since clarified that a "careful reading of that case demonstrates that it does not support the view that, in Illinois, an action for breach of contract can be maintained without proof of damages." *TAS Distributing Co.*, 491 F.3d at 631 n.6. Rather, it recognized that "Illinois law is clear that, to state a claim for breach of contract, one must be able to prove actual damage." *Id.*

member's ability to reach the departure gate on time— *e.g.*, size of airport, length of security line, physical fitness of the class member, etc.—*e.g.*, the amount of damages is measured by the costs incurred by the passenger following cancellation such as hotel stays, food expenses, increased fare, etc.

In addition, Huddleston relies on two cases for the proposition that a properly certified class may include persons who have not been injured by the defendant's conduct. However, in *Messner v. Northshore University Health System*, 669 F.3d 802 (7th Cir. 2012), a legal violation had already been found by the Federal Trade Commission, and at issue was the antitrust impact of the unlawful merger. The Seventh Circuit simply held that Rule 23(b)(3) required the plaintiffs "to show that it was possible to use common evidence to prove that [the unlawful] merger injured the members of the proposed class." *Id.* at 816. And because the plaintiffs proposed to use an expert report and opinion that set forth a common method for establishing antitrust impact, they had satisfied the predominance inquiry. *Id.* at 818 ("[The expert] claimed that he would use common evidence . . . to show that all or most of the insurers and individuals received coverage through those insurers suffered some antitrust injury as a result of the merger. That was all that was necessary to show predominance for purposes of Rule 23(b)(3)."). By contrast, liability here would not be based on common evidence, but instead evidence that would vary across each individual class member. Similarly, *Kohen v. Pacific Investment Management Company LLC*, 571 F.3d 672 (7th Cir. 2009), does say that a class will "often include persons who have not been injured by the defendant's conduct." Yet this does not change the fact that when the existence of an injury cannot be determined through common facts, but only through individual factual inquiries, predominance is not met.

In short, it is clear from the pleadings that determining American Airlines's liability to the proposed class members would require individualized factual inquiries as to each member. Thus, Huddleston's proposed class does not meet the predominance requirement of Rule 23(b)(3). For that reason, his class allegations must be stricken.

## CONCLUSION

For the foregoing reasons, American Airlines's motion to strike class allegations (Dkt. No. 37) is granted.

Dated: October 2, 2018

ENTERED:

_____
Andrea R. Wood
United States District Judge